NO. 07-07-0360-CR


NO. 07-07-0361-CR


NO. 07-07-0362-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



OCTOBER 15, 2007



______________________________




BRODERICK EUGENE DAVIS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NOS. 50781-D, 52425-D & 52253-D; HONORABLE DON EMERSON, JUDGE



_______________________________



Before CAMPBELL and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION


 Appellant, Broderick Eugene Davis, filed notices of appeal challenging convictions
for aggravated assault with a deadly weapon, robbery, and assault. By separate orders
signed September 27, 2007, the trial court granted Appellant's Motion for New Trial.

 When the trial court grants a motion for new trial, it restores the case to its position
before the former trial. Tex. R. App. P. 21.9(b). Because there is no conviction to be
appealed, we have no jurisdiction to consider these appeals. See Waller v. State, 931
S.W.2d 640, 643-44 (Tex.App.-Dallas 1996, no pet.).

 Consequently, the appeals are dismissed.

 Patrick A. Pirtle

 Justice



Do not publish.



                                       Appellant

v.

THE STATE OF TEXAS, 

                                                                                                 Appellee
_________________________________

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NOS. 10,982, 10,983 & 10,984; HON. DAN MIKE BIRD, PRESIDING
_______________________________

Memorandum Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
          Coy Lance White appeals his three convictions, one for aggravated assault with a
deadly weapon and two for felony deadly conduct. Through thirteen issues, he challenges
1) the legal and factual sufficiency of the evidence to support each of those convictions,
2) the trial court’s admission into evidence of a gun similar to that allegedly used in each
of the offenses, 3) the trial court’s admission of appellant’s oral statement and written
statement, 4) the trial court’s failure to charge the jury on lesser-included offenses, and 5)
the trial court’s admission of extraneous offenses during the punishment phase. We affirm
the judgments. 
          Background
          Each of appellant’s convictions arose from the events of the evening of May 9,
2007, at a trailer house at 2200 Maiden Street in Vernon. Virginia White, her husband, and
various friends and relatives, including appellant, were gathered both inside and outside
of the house. At some point, Tiesha Youngberg asked Brad White, appellant’s cousin, if
she could have a beer which was laying by the curb. When she reached for it, appellant
grabbed her by the throat and took the beer from her. When Brad asked appellant to let
her go, Brad and appellant became involved in an altercation. One of the other attendees
fired a weapon several times into the air ostensibly to break up the disagreement. After
he did so, appellant became even more upset, made a call on his cell phone in which he
stated he “would be back to blaze this mother fucker up,” and left in his yellow Cadillac. 
          Approximately twenty minutes later, appellant returned to the location and began
firing a weapon. Multiple shots were fired into the trailer house and later into a vehicle
driven by Djuanna Newman. Appellant then entered the residence of a neighbor and
displayed the weapon which was never recovered by police. 
          Issues 1-8 - Legal and Factual Sufficiency
          In his first eight issues, appellant asserts that the evidence supporting his
convictions is both legally and factually insufficient. We overrule the issues.
          The standards by which we review such challenges are well established. We refer
the parties to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and
Watson v. State, 204 S.W.3d 404 (Tex. Crim. App. 2006) for a discussion of them. 
          Aggravated Assault against Djuanna Newman
          Appellant was charged with intentionally or knowingly threatening Djuanna Newman
with imminent bodily injury by discharging a firearm in her direction and exhibiting a firearm. 
Tex. Penal Code Ann. §22.02(a)(2) (Vernon Supp. 2008). He argues that there is no or
insufficient evidence to show that he intentionally or knowingly discharged a firearm in her
direction. 
          Djuanna testified that 1) after bullets were fired at the trailer house, she left to drive
her uncle home, 2) on her way back, she saw appellant’s car on the side of the road, 3)
she observed his car door open, 4) she sped up, 5) she saw appellant’s face “for maybe
one second,” 6) she saw gunfire coming from his car door, 7) upon arriving home, she
noticed bullet holes in her windshield, in the front passenger side fender, in the front
passenger side door, and in the trunk, and 8) appellant later apologized to her for what
happened, offered her $100 to fix her car, and asked her to sign an affidavit of non-prosecution. Other evidence illustrated that the bullet holes were not in the vehicle prior
to Djuanna taking her uncle home. 
          Intent may be inferred from the acts, words, and conduct of the accused. Guevarra
v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). From the above evidence, a rational
factfinder could infer, beyond reasonable doubt, that appellant intentionally aimed and fired
at Djuanna as she approached and passed him. 
          As for the suggestion that the “one second” in which Djuanna claims to have seen
appellant’s face being too weak to support the verdict, we note that Djuanna knew
appellant previously and was, in fact, related to him. So she was capable of recognizing
him. Furthermore, the credibility of her identification was for the jury to weigh and
determine, and we find its resolution of that matter factually sufficient to support the verdict. 
          Deadly Conduct Against Meadiol Lee
          Appellant was also charged with aggravated assault against Meadiol Lee. However,
the jury found him guilty of felony deadly conduct. Next, a person engages in such conduct
if he knowingly discharges a firearm at or in the direction of someone. Tex. Penal Code
Ann. §22.05(b)(1) (Vernon 2003). Appellant asserts that there is no evidence or insufficient
evidence showing that he knowingly shot at Meadiol. And, we again disagree.
             The record shows that 1) Meadiol overheard appellant say that he was going to
come back to the trailer house and shoot up the place, 2) later she exited her truck which
was parked at the residence, looked behind her, and saw someone start shooting, 3) she
fell to the ground and prayed that she wouldn’t be shot, 4) appellant later apologized to her
for the incident and said he wasn’t trying to hurt her but was upset, 5) she signed an
affidavit of non-prosecution at appellant’s request, and 6) the tires of her truck were shot
out as well as the front and back windows. It is true that Meadiol was unable to state that
appellant was the one who shot at her. However, given appellant’s prior threat, eyewitness
testimony that appellant was in the same area with a gun and he was seen firing it after
having looked in the direction of the trailer house, and his later apology to her for the
incident, a rational jury could have inferred, beyond reasonable doubt, both that he was the
person shooting in the direction of Meadiol and that he knowingly did so. Furthermore, that
finding would not be so against the great weight of the evidence as to be manifestly unjust.
          Deadly Conduct by Firing into House
          Finally, the jury found appellant guilty of deadly conduct by knowingly discharging 
a firearm at or in the direction of a habitation (the trailer house on Maiden Street) and was
reckless as to whether the habitation was occupied. See Tex. Penal Code Ann.
§22.05(b)(2) (Vernon 2003). Appellant believes that there was insufficient evidence to
prove that he 1) intentionally or knowingly fired several shots into the residence, and 2) was
reckless as to whether the house was occupied. We disagree. 
          The record contains evidence showing that 1) appellant had been at the house
twenty minutes earlier and knew that there were several people in the house, 2) appellant
threatened to come back and shoot up the place, 3) appellant asked someone to bring him
an “SK,” 4) one of the residents heard “a lot” of shots and the shots were “one after the
other,” 5) appellant was seen in the area around that time with a large gun, 6) appellant
was observed to have exited his car, looked at the trailer, and then fired a “long gun”
multiple times, 7) shell casings of a size to fit either an SKS rifle or an AK-47 were found
in the area where appellant was seen shooting the gun, 8) bullets were heard hitting the
house, and 9) three fresh bullet holes were found on the side of the house. The jury was
free to infer from this that appellant was reckless as to whether occupants were in the
residence and that he intentionally or knowingly fired several rounds into it. Moreover,
such inferences do not arise from weak evidence and are not overwhelmed by
contradictory evidence. 
 
          Issue 9 - Admission of Gun
          During trial, the State was allowed to introduce into evidence a replica of the gun
allegedly used by appellant during the commission of his offenses. That replica was an
SKS assault rifle which appellant argues was merely used to inflame and prejudice the jury. 
We overrule the issue.
          An object which is not an exact replica of the one used to commit an offense is
admissible as demonstrative evidence if 1) the original is unavailable, 2) the original would
be admissible if available, 3) the evidence is relevant and material to an issue in
controversy, and 4) its probative value outweighs any inflammatory affect. Simmons v.
State, 622 S.W.2d 111, 113-14 (Tex. Crim. App. 1981). And, whether the trial court erred
in admitting such demonstrative evidence depends on whether it abused its discretion. Id. 
          The rifle admitted into evidence was identified as looking similar to the gun that
appellant carried. Thereafter, the trial court instructed the jury to consider the firearm 
solely as evidence that demonstrates the appearance of the object used in the alleged
offense. Next, a firearm may be relevant to aid the jury in understanding what type of
weapon was used and in understanding a complaining witness’ testimony. Fletcher v.
State, 902 S.W.2d 165, 167 (Tex. App.–Houston [1st Dist.] 1995, pet. ref’d). Moreover, the
type of weapon used here (an assault or combat rifle) was relevant to determining the
pivotal issue of appellant’s intent. Thus, we cannot say the trial court’s decision to admit
the rifle fell outside the zone of reasonable disagreement or evinced abused discretion. 
 
 
          Issue 10 - Testimony of Jeff Case
          Appellant next complains of the admission of his oral and written statements to Jeff
Case, an investigator for the district attorney. Purportedly, both statements were the result
of a custodial interrogation. We overrule the issue. 
          According to the record, appellant came to the District Attorney’s office and
requested to speak with someone. This occurred the day after his arrest and release on
bond. Not knowing of the shooting, Case spoke with him and was told that “people were
saying he [appellant] shot at them.” When asked whether he indeed had shot at someone,
appellant replied, “only after they had shot at me first.” Thereafter, appellant left and
returned the next day with his father and brother to execute a written statement. The latter
contained the Miranda admonishments, but in executing it, appellant said nothing about
shooting a weapon. Appellant left after giving the statement. 
          Assuming arguendo that appellant’s voluntarily appearing at the District Attorney’s
office, requesting to speak with someone, engaging in a conversation with an investigator,
leaving a short time later, voluntarily reappearing the next day with kin to make another
statement, and again leaving evinced custodial interrogation (which we doubt), we find no
harm arising from receiving the statements into evidence. This is so because the
admission to Case about shooting the firearm was, for all practical purposes, no different
than an admission to shooting the rifle implicit in appellant’s apologies to his victims, offers
to recompense them, efforts to explain his conduct, and requests that they not prosecute
him. So, because like evidence which appellant does not attack appears of record, we
cannot say that he suffered any harm when the trial court allowed the jury to hear what he
told Case. 
          Issue 11 - Lesser-Included Offenses 
          Next, appellant contends that he was entitled to charges on the lesser-included
offenses of felony and misdemeanor deadly conduct with respect to the accusation of 
aggravated assault. A person can be guilty of deadly conduct by recklessly engaging in
conduct that places another in imminent danger of serious bodily injury. Tex. Penal Code
Ann. §22.05(a) (Vernon 2003). Appellant argues that the jury could have found him
reckless as to whether the vehicle driven by Djuanna was occupied. He also claims the
vehicle could have received the bullet holes during the shooting at the trailer house. And,
if the jury so concluded, he allegedly would have been entitled to the instructions. We
overrule the issue.
          To be entitled to a lesser instruction, there must be evidence of record affirmatively
negating the element present in the greater offense but absent in the lesser. Morris v.
State, No. 07-99-0498-CR, 2000 Tex. App. Lexis 7181 at *5 n.1 (Tex. App.–Amarillo
October 25, 2000, pet. ref’d) (not designated for publication). It is not enough to simply rely
on the State’s failure to prove the particular element. Id. Here, there was evidence that
Djuanna’s vehicle did not have any bullet holes in it when she left the trailer house to drive
her uncle home. She also testified that she sped up when she saw appellant parked along
the road negating any contention that the vehicle was not moving when appellant shot at
it. Yet, we find no evidence to support the contention that appellant was only reckless as
to whether the vehicle was occupied or that the car was only shot at during the shooting
incident at the trailer. Accordingly, the trial court did not err in failing to give the requested
instructions. 
          Issues 12 & 13 - Admission of Extraneous Offenses
          In conclusion, appellant complains of the admission into evidence during the
punishment phase of certain extraneous offenses. This evidence consisted of testimony
from a cell mate of appellant’s who stated that appellant had forced him to perform sexual
acts on and receive them from appellant while in prison. We overrule the issue.
          The standard of review again is one of abused discretion. Ellison v. State, 86
S.W.3d 226, 227 (Tex. Crim. App. 2002). Additionally, during the punishment phase of a
trial, the trial court may admit evidence of extraneous offenses or bad acts that are shown,
beyond a reasonable doubt, to have been committed by him or for which he could be held
criminally responsible regardless of whether he previously was charged with or finally
convicted of them. Tex. Code Crim. Proc. Ann. art. 37.07 §3(a)(1) (Vernon 2006). Next,
such evidence is highly probative of appellant’s character, see Lamb v. State, 186 S.W.3d
136, 144 (Tex. App.–Houston [1st Dist.] 2005, no pet.), and relevant in assisting the
factfinder in selecting the appropriate punishment in a particular case. Sims v. State, No.
PD-1575-07, 2008 Tex. Crim. App. Lexis 820 at *8 (Tex. Crim. App. July 2, 2008). 
          While the type of extraneous acts in question here are repulsive to some, they
nonetheless evince appellant’s character, reflect the threat that he poses to others, and
bear on the likelihood of rehabilitation. Thus, a factfinder could legitimately deem them
quite relevant in determining his sentence. And, given their probative value, we cannot say
the trial court’s decision to admit them fell outside the zone of reasonable disagreement. 
See Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (specifying that
to be the test in assessing whether discretion has been abused). 
          Having overruled all of appellant’s issues, the judgments of the trial court are
affirmed. 
 
                                                                           Per Curiam


Do not publish.